IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHADWICK JUSTIN McCRACKEN | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:25-cv-1604 |
| | ) | |
| v. | ) | Magistrate Judge Maureen P. Kelly |
| | ) | |
| FRANK BISIGNANO, | ) | |
| *Commissioner of Social Security*, | ) | Re: ECF No. 13 |
| | ) | |
| Defendant. | ) | |

**ORDER**

Pending before the Court is the Motion for Summary Judgment, ECF No. 13, and Brief in Support, ECF No. 14, filed by Plaintiff Chadwick Justin McCracken ("Plaintiff"), appealing the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits ("DIB") under Subchapter II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and his claim for supplemental security income ("SSI") under Subchapter XVI of the Act, 42 U.S.C. § 1381 *et seq.* The Commissioner has filed a Brief in Opposition, ECF No. 15.[1]

Upon consideration of the parties' filings, and after reviewing the Commissioner's decision, the Court finds that the Commissioner's findings are supported by substantial evidence and will affirm. See 42 U.S.C. § 405(g); Biestek v. Berryhill, 587 U.S. 97, 102-03 (2019);

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, including trial and entry of final judgment, with direct review by the United States Court of Appeals for the Third Circuit if an appeal is filed. ECF Nos. 17, 18.

Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs, 48 F.3d 114, 117 (3d Cir. 1995) (citing Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988)).

## I. BACKGROUND

Plaintiff protectively filed claims for DIB and SSI effective November 6, 2021, claiming that he became disabled on March 27, 2021. AR at 154, 346-51, 352-53.[2] After being denied initially on January 28, 2022, and upon reconsideration on May 31, 2022, Plaintiff sought, and obtained, a telephone hearing before an Administrative Law Judge ("ALJ") on October 14, 2022. Id. at 154, 113-20, 123-30, 131-39, 141-49, 198, 80-112. In a decision dated December 27, 2022, the original ALJ assigned to the case denied Plaintiff's request for benefits. Id. at 154-68. On December 14, 2023, however, the Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision, and remanded the matter to an ALJ to address apparent conflicts between the Dictionary of Occupational Titles and the vocational expert's testimony at the October 14, 2022 hearing. Id. at 175-76.

A second administrative hearing was held before a new ALJ on June 13, 2024. Id. at 34, 54-79. In a decision dated December 3, 2024, the ALJ denied Plaintiff's request for benefits, finding that he was able to perform jobs that exist in significant numbers in the national economy. Id. at 34-47. On August 11, 2025, the Appeals Council declined to review this decision. Id. at 1-4.

Plaintiff has filed an appeal with this Court and has filed a Motion for Summary Judgment and Brief in Support, ECF Nos. 13, 14, to which the Commissioner has filed a Brief in Opposition, ECF No. 15.

---

2 The Court will refer to the Administrative Record, docketed at ECF No. 7, as "AR."

On appeal, Plaintiff contends that the ALJ failed to discuss all of the probative evidence supporting his complaints of disabling neuropathic pain and numbness in formulating his residual functional capacity ("RFC"). ECF No. 14. As discussed herein, the Court disagrees and finds that the ALJ adequately considered all of the pertinent record evidence in determining Plaintiff's RFC. Accordingly, the Court finds that the record sufficiently supports the ALJ's ultimate determination that Plaintiff was not disabled.

## II. STANDARD OF REVIEW

Judicial review of a social security case is based upon the pleadings and the transcript of the record, and the scope of that review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See 42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues and reviews the ALJ's findings of fact to determine whether they are supported by substantial evidence); Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001). If the district court finds this to be so, it must uphold the Commissioner's final decision. See Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).

The Social Security Administration ("SSA") has promulgated regulations incorporating a five-step sequential evaluation process to guide ALJs in determining whether a claimant is under a disability as defined by the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. At Step One, the ALJ must determine whether the claimant is currently engaging in substantial gainful activity ("SGA"). If he or she is not engaging in such activity, at Step Two, the ALJ determines whether the claimant is suffering from a severe impairment. If so, the ALJ proceeds to Step Three to determine whether the claimant's impairment meets or equals the criteria for a listed

impairment. If a claimant satisfies a listing, a finding of disability is automatically directed. If the claimant does not satisfy a listing, the analysis proceeds to Steps Four and Five.

In considering these steps, the ALJ must formulate the claimant's RFC, which is defined as the most that an individual is still able to do despite the limitations caused by his or her impairments. See Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At Step Four, it is the claimant's burden of demonstrating an inability to perform his or her past relevant work. If the ALJ determines that the claimant lacks the RFC to resume his or her former occupation, the evaluation then moves to Step Five. At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability.

## III. ALJ'S DECISION AND PLAINTIFF'S POSITION

The ALJ determined that Plaintiff was not disabled after applying the five-step process. First, he found that Plaintiff had not engaged in SGA through the alleged onset date of March 27, 2021. AR at 37.[3] After finding that Plaintiff suffered from several severe impairments, including diabetic neuropathy, degenerative joint disease of the knee, and anxiety disorder, none of which met or equaled a listing, the ALJ proceeded to determine Plaintiff's RFC. Id. at 37-40. The RFC, as found by the ALJ, restricted Plaintiff to a limited range of sedentary work with additional postural, environmental, manipulative, and mental restrictions. Significantly, the RFC did not contain any limitations regarding the medical necessity of a cane to ambulate. Id. at 40. Based on this RFC, the ALJ found that Plaintiff was not disabled because he was capable of

---

[3] The ALJ also found that Plaintiff met the insured requirements to qualify for DIB through December 31, 2025. Id.

performing work in the national economy, including the representative occupations of toy stuffer, mail sort clerk/addresser, and surveillance system monitor. Id. at 40-47.

As noted above, Plaintiff contends that the ALJ failed to discuss all of the probative evidence supporting his complaints of disabling neuropathic pain and numbness in formulating the RFC. ECF No. 14. Specifically, he alleges that the ALJ failed to acknowledge and discuss evidence regarding his need to walk with a cane, rendering the ALJ's determination that Plaintiff did not medically require the use of a cane to ambulate inadequate. Id. He further argues that the ALJ's failure to sufficiently discuss several EMG studies and certain records from his physical therapy that would support a more restrictive RFC was an error warranting remand. Id.

## IV. DISCUSSION

### A. Need for an Assistive Device

As discussed, the ALJ did not include in the RFC any restriction limiting Plaintiff to the use of a cane to ambulate. Plaintiff suggests that this determination was based on nothing more than the ALJ's lay opinion, as he did not rely specifically on any medical opinion in so finding and failed to acknowledge that Plaintiff's treating healthcare providers had observed him with a cane, diagnosed him with neuropathy, and not indicated any inappropriateness as to his use of a cane. Id. at 15. However, this assessment does not fairly reflect the ALJ's review of the record.

As Plaintiff acknowledges, for the use of an assistive device to be included in the RFC, the record generally must demonstrate that the use was medically necessary as well as the circumstances under which the device was required. See Social Security Ruling 96-9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996). While a claimant need not necessarily establish that the assistive device was medically prescribed, he or she must show more than the mere use of such a device. See Drowell v. Berryhill, Civ. No. 17-795, 2018 WL 3574890, at *2 (W.D. Pa. July 25,

2018) (citing Houze v. Barnhart, 53 F. App'x 218, 222 (2002)) (finding that the ALJ did not err in failing to account for claimant's use of a cane in formulating the RFC where there were multiple references to the fact that claimant used a cane but no evidence of its medical necessity). Accordingly, evidence that a claimant's doctors saw him with a cane, without evidence that any of these doctors had opined that the cane was medically necessary, is not particularly relevant. See id.; Fluitt v. Kijakazi, Civ. No. 22-160, 2023 WL 4896486, at *1 (W.D. Pa. July 31, 2023).

In any event, the ALJ expressly acknowledged in his decision that Plaintiff "was observed ambulating with a cane." AR at 42. In fact, he cited to precise medical records from other physicians indicating that Plaintiff had been observed using a cane. Id. at 41, 1056, 1477. To the extent that Plaintiff argues there were additional medical records that should have been referenced merely establishing his use of a cane, such evidence would be cumulative and/or duplicative of the evidence already discussed and would not have changed the outcome of the ALJ's determination. See McGraw v. Comm'r of Soc. Sec., 609 F. App'x 113, 116 (3d Cir. 2015) (failure to discuss a doctor's report is harmless where it was considered cumulative evidence "and the report therefore added nothing that the ALJ had not already taken into account.").

The ALJ directly addressed the one opinion in the record that provided that use of a cane was medically necessary for Plaintiff to ambulate, that of consultative examiner Melissa Walls, NP.[4] AR at 876. In finding this opinion to be not persuasive, the ALJ explained how the clinical findings – including those from NP Walls's own examination of Plaintiff – as well as Plaintiff's

---

4 The court also notes that NP Walls merely checked a box on a form indicating that a hand-held assistive device was medically required for ambulation without any further discussion. Such evidence is generally insufficient to establish medical necessity. See Houze, 53 F. App'x at 222.

reported activities of daily living and a consistent lack of findings of muscle atrophy did not support a finding that Plaintiff required the use of an assistive device to walk. Id. at 41, 44. He further emphasized that Plaintiff had not ever been prescribed a cane or other assistive device by any of his treating physicians. Id. Although the ALJ did not rely specifically on the prior administrative medical findings of Stephanie Prosperi, M.D., or Pamela Gianni, M.D., in making this determination, neither of these administrative reviewing agents concurred with NP Walls as to Plaintiff's need for an assistive device to ambulate.[5] Id. at 117, 135. Regardless, in any event, the ALJ was not required to expressly rely on any particular medical opinion in making this finding. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006) ("There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC.").

The ALJ here did what he was required to do – consider the record as a whole, including the objective medical evidence, Plaintiff's treatment history, his activities of daily living, and the various medical opinions – in formulating the RFC. Substantial evidence supports his finding that the RFC in this case was not required to include a limitation regarding the use of an assistive device to ambulate.

**B. Failure to Discuss Other Medical Evidence**

Plaintiff further argues that the ALJ's RFC determination is without adequate support because the ALJ did not sufficiently address three EMG studies and certain records from Plaintiff's physical therapy. He maintains that this evidence supports a more restrictive RFC and

---

5 Plaintiff is correct that the ALJ found the opinions of the administrative reviewing agents to be not persuasive, but this was based on his determination that the record warranted ***greater*** restrictions than to which they had opined. AR at 44.

needed to be specifically addressed. ECF No. 14. To the contrary, the Court finds that whatever discussion of this particular evidence was necessary was sufficient in this case.

It is axiomatic that, in making the required findings, an ALJ must consider all of the evidence and "give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000) (citing Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). However, it is equally well-established that an ALJ "need not mention every piece of evidence in the record." Beety-Monticelli v. Comm'r of Soc. Sec., 343 F. App'x 743, 747 (3d Cir. 2009). Therefore, the Court must determine not only whether the ALJ discussed the evidence at issue, but also, if he did not, whether such discussion was necessary.

While the ALJ cited generally to the treatment records from the UPMC Neurological Institute-Wexford contained in Exhibit 14, AR at 1494-1696, some of which reference the EMG studies performed on Plaintiff, he did not expressly discuss the studies themselves. However, such discussion was not needed given that these studies did not offer insight into Plaintiff's functional ability, but merely confirmed the diagnosis of diabetic neuropathy. When crafting the RFC, the issue is not whether a claimant has been diagnosed with a specific condition, but what functional limitations are caused by the condition. See Walker v. Barnhart, 172 F. App'x 423, 426 (3d Cir. 2006). As discussed, the ALJ did find that diabetic neuropathy was one of Plaintiff's severe impairments. Id. at 37. The EMG studies do not indicate any additional limitations that should have been included in the RFC, nor has Plaintiff suggested what additional limitations were warranted.

The ALJ acknowledged Plaintiff's physical therapy records, citing them as examples of "often unremarkable" examinations demonstrating normal strength to the lower extremities and

normal range of motion. AR at 41. However, Plaintiff argues that these physical therapy records also included evidence of balance problems, slow gait, and strength and sensation deficits. ECF No. 14 at 15-16. He posits that the ALJ's failure to discuss these aspects of the physical therapy records rendered the ALJ's consideration of the records incomplete.

The ALJ did, though, acknowledge that Plaintiff had exhibited incidents of reduced strength in the extremities, altered sensation, slow gait, and balance issues. AR at 40-42. To the extent that he did not cite specifically to the physical therapy records in making these observations, such failure does not change the analysis, as the evidence would simply be cumulative of the evidence to which he did cite in making these findings. See McGraw, 609 F. App'x at 116.

The more fundamental problem with Plaintiff's argument is that it is essentially an invitation for the Court to reconsider the evidence. "The presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." Malloy v. Comm'r of Soc. Sec., 306 F. App'x 761, 764 (3d Cir. 2009). Rather, if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently. See Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)); Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986). The Court declines Plaintiff's invitation and reiterates that substantial evidence exists in the record to support the ALJ's RFC findings.

## V. CONCLUSION

For all of the foregoing reasons, the Court finds that the ALJ applied the correct legal standards and that substantial evidence supports his decision. It will therefore affirm.

AND NOW, this 2nd day of November 2026, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment, ECF No. 13, is DENIED and that the Commissioner's decision denying Plaintiff's claim for DIB and SSI is AFFIRMED.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if any party wishes to appeal from this Order, he or she must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk of Court, United States District Court.

SO ORDERED,

Maureen P. Kelly

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record via CM/ECF